**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-50074-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Giovanny Nava, | |
| Defendant. | |

Pending before the Court is Defendant's motion for early termination of supervised release. (Doc. 20.) The government opposes the motion. (Doc. 22.) For the following reasons, the motion is denied.

**BACKGROUND**

In March 2016, Defendant was charged with various drug trafficking offenses in the District of Nebraska. (Doc. 1-1 [indictment].) As summarized in the government's response brief, "Defendant's involvement in the conspiracy was using his semi-truck to transport narcotics and drug proceeds. At the time, Defendant was a self-employed truck driver out of Glendale, Arizona. He had a commercial drivers' license and made $8,000.00 monthly as a truck driver. On March 10, 2016, law enforcement officers observed the co-defendants leave a residence in Omaha, Nebraska to meet with Defendant at a truck stop in Council Bluffs, Iowa. At the truck stop, law enforcement observed a co-defendant remove two bags, containing 12 kilograms of cocaine and 14 pounds of methamphetamine from Defendant's semi-truck to his (co-defendant) own car. Defendant's semi-truck was

later stopped and $17,020 in U.S. Currency, as well as a loaded Sig Sauer 1911 semiautomatic handgun was found.  Defendant admitted the gun was his, and stated the money was not his payment for the drugs, but rather, money he was supposed to deliver to the person in Phoenix, Arizona who hired him to deliver the drugs.  Post-*Miranda*, Defendant stated he transported narcotics from Arizona to Omaha, Nebraska on four occasions, each time transporting approximately 10-15 kilograms of cocaine and approximately 10-15 kilograms of methamphetamine.  He was paid between $5,000-10,000 for each trip and would be paid by an unknown person when he returned to Phoenix."  (Doc. 22 at 2, citations omitted.)

In October 2016, after pleading guilty, Defendant was sentenced to 135 months' imprisonment, to be followed by a five-year term of supervised release.  (Doc. 1-2 [judgment].)

In January 2022, Defendant was released from custody and began his term of supervised release.  (Doc. 20 at 2.)

In March 2022, supervision was transferred from the District of Nebraska to the District of Arizona.  (Doc. 1.)

On January 22, 2024, Defendant filed the pending motion for early termination. (Doc. 20.)  In support of his request, Defendant notes that he "did not sit idly" while in custody and instead completed an array of rehabilitative and educational programs; that since his release "he has remained clean and sober," "has similarly presented clean drug urinalysis drug tests," "has had no contact with the criminal justice system," and "has made exemplary progress in his work and personal life"; that he recently obtained his commercial driver's license and set up his own trucking company; and that his probation officer believes he has done "extremely" well on supervised release and endorses his request for early termination.  (*Id.* at 2-3.)  Defendant also contends that his supervised release-based travel restrictions are interfering with his attempts to expand his new trucking business, because when he wishes to bid for a job, he must "request approval from probation" and "by the time he does obtain that approval from probation, the job is often assigned to

another driver." (*Id.* at 4.)

On February 6, 2024, the government filed an opposition to Defendant's request. (Doc. 22.)  As an initial matter, the government argues that "mere compliance with the terms of supervised release" does not justify early termination, as such compliance "is expected." (*Id.* at 3-4.)  The government's primary reason for opposing Defendant's early-termination request is because "one cannot ignore that Defendant's current form of employment—self-employed truck driving—is the same employment Defendant had and was the means in which Defendant engaged in drug trafficking in the instant case." (*Id.* at 4.)  According to the government, "[t]erminating the Defendant from supervised release eliminates any monitoring" and "there is still a need for the watchful eye of the Probation Officer to reduce Defendant's risk of reoffending given that . . . the counts of conviction took place while Defendant was transporting drugs and U.S. Currency in his work truck across state lines." (*Id.* at 6.)  Finally, the government argues that Defendant's concerns about losing out on trucking jobs due to his travel restrictions are exaggerated, because "[a]ccording to Defendant's probation officer, Defendant currently resides in West Texas, approximately 20 miles from New Mexico.  Defendant's probation officer has given him permission to travel freely between the District of New Mexico and the Northern District of Texas for work purposes, without prior approval.  This allows Defendant to travel freely throughout the entire state of New Mexico and about half the state of Texas, for work purposes, without prior approval.  The United States believes this an appropriate balance that allows Defendant to pursue work opportunities while keeping the public safe from future harms of Defendant.  If Defendant continues to perform well on supervised release, and work opportunities in other District[s] arise, perhaps probation would be willing to consider possibly expanding Defendant's travel permissions to other districts." (*Id.* at 4-5.)

…

…

…

**DISCUSSION**

Defendant's request for early termination is governed by 18 U.S.C. § 3583(e)(1), which provides that a court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See generally United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). The statute provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.' The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.") (citations omitted).

Although Defendant's conduct has been exemplary since his conviction—he took full advantage of his time in custody and has been what appears to be a model citizen since his supervised release term began in January 2022—that is only part of the equation. The Court also must consider certain § 3553 factors, including the "history and characteristics of the defendant" per § 3553(a)(1) and the need "to protect the public from further crimes of the defendant" per § 3553(a)(2)(C), as well as the "interest of justice." The Court agrees with the government that, in light of the nature of the conduct that gave rise to Defendant's conviction and Defendant's continued involvement in the trucking industry, the interest of justice and public safety would best be served by ensuring that Defendant's trucking-related activities remain subject to *some* degree of oversight and supervision.

The Court does not, to be clear, wish to do anything that might interfere with Defendant's efforts to get his new business off the ground. The point of supervised release is to assist supervisees in establishing and maintaining a law-abiding life, not thwarting

such efforts, and it is heartening to hear that Defendant is displaying initiative in starting a new business. Thus, to the extent there are any *modifications* to Defendant's current terms of supervised release (such as additional modifications to his travel restrictions) that might address the concerns raised in his motion, Defendant is encouraged to work with his assigned probation officer to pursue those modifications. But pursuing such modifications is a more reasonable, tailored approach to addressing Defendant's concerns than jettisoning the entire supervisory framework, especially considering that Defendant's probation officer has previously modified his travel restrictions to partially accommodate his concern.

Accordingly, **IT IS ORDERED** that Defendant's motion for early termination of supervised release (Doc. 20) is **denied**.

Dated this 1st day of March, 2024.

Dominic W. Lanza
United States District Judge